NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **SURESH BADRINAUTH** : | |
| : | Civil Action No. 04-cv-2552 (PGS) |
| Plaintiff, : | |
| v. : | **OPINION** |
| **METLIFE CORPORATION** : | |
| Defendant. : | |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Defendant MetLife Corporation's ("MetLife") motion for summary judgment pursuant to Fed.R.Civ.P. Rule 56 (c), to dismiss the claims of Plaintiff Suresh Badrinauth ("Badrinauth") in their entirety. Badrinauth filed a Complaint based on various constitutional and state law claims including defamation, wrongful termination, and race/national origin discrimination in violation of the New Jersey Law Against Discrimination (NJLAD), and Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e, *et seq.* Plaintiff filed the instant Complaint against Metlife Corp., and Virgel Aquino, and all Defendants have moved for summary judgment. This Court held oral argument on February 29, 2008, and a subsequent telephone conference on March 17, 2008.

*Background*

In 1996 Badrinauth, born in Guyana, began work with Nathan & Lewis Co., ("NL") a broker-dealer in New York. In 2002, Metlife acquired NL. As part of this acquisition, Mr. Aquino and

another individual met with individuals from NL to discuss the transition to MetLife. Aquino was the Chief Operating Officer of BDRC. Robert Costello, a manager of the Broker Dealer Resource Center ("BDRC") Cashiering Operations Group interviewed plaintiff for a position. At this time, Alyssa Garrick was supervisor of the Cashiering Group. Badrinauth reported to Costello who reported to Aquino.

Mr. Costello offered Badrinauth a position which required a transfer to the Iselin, New Jersey office. According to Badrinauth, Mr. Costello promised him a promotion if he made the transition. From February 2002 through June 2002, Badrinauth remained at the New York office making periodic trips to the Iselin office. In June 2002, Badrinauth relocated full-time to the Iselin office. He relocated his residence to Edison, New Jersey, in 2003 (Compl. ¶¶12, 21).

Badrinauth alleges that in May 2002 he discovered that Metlife was failing to pay certain employees overtime at the required rate (Compl. ¶ 31). Rather than paying time and half it paid $16 per hour. Badrinauth raised this issue with Costello in May 2002 and then again in February 2003. Badrinauth states that he threatened to inform the Department of Labor of this issue. Badrinauth testified that he never reported any of these alleged violations to the Department of Labor or any other agency or regulatory body (Pl. Tr. 408:5-409:19). According to Badrinauth, Aquino issued checks for back pay to affected employees in March 2003 (Compl. ¶32).

Also in May 2002, Badrinauth opened a joint personal Brokerage Account with his fiancee, Marliese Flis, with an initial deposit of $40,000. As this was a joint account, Badrinauth was required to obtain Ms. Flis' signature for any transactions involving the account (O'Keefe Cert. Ex. 11 at 3). Through this Brokerage Account Badrinauth traded stocks.

2

Sometime in March 2003, Badrinauth received his first performance review for the 2002 year (Compl. ¶18). Costello indicated that plaintiff "met some expectations and/or contribution less than many others." The performance set forth some positive comments but generally was critical of plaintiff's performance (Def. Br. at 4 O'Keefe Cert. Ex. 10). The performance evaluation also noted that Badrinauth required many "second extensions[1]" and trade cancellations. According to Badrinauth this negative performance evaluation precluded his opportunity for a promotion; and Badrinauth concedes that he failed to apply for a promotion. In March 2003, Costello was promoted to Director of Cashiering and Garrick was promoted to Manager of the Cashiering Group. As a result Garrick became Badrinauth's supervisor.

In June 2003, Badrinauth carried a negative balance in his Brokerage Account and Aquino noticed irregularities including trades not paid for, check disbursements without joint signatures, and a change of address entered from Badrinauth's computer. According to Aquino, Badrinauth was not authorized to perform such a change. Aquino contacted Metlife's Special Investigation Unit (SIU) to conduct an investigation (Aquino Tr. 125:126:4). The SIU investigation found that Badrinauth changed the address of the Brokerage Account from Ms. Flis' to his address, and this was a change that was beyond Badrinauth's authority (Aquino Tr. 125:16-126:4; O'Keefe Cert. Ex. 11 at 3). In addition, SIU uncovered that Badrinauth made several withdrawals from the account without Flis' consent and written authorization (Pl. Tr. 496:2-497:2; 499:10-8 and Flis Tr. 38:11-39:6, 40:25-42:1).

---

[1] A second extension is the situation wherein a normal five-day period for paying securities transactions is extended for another five days, and then extended a second time for another five days.

3

In addition, there were several questionable securities transactions totaling $100,000. In one transaction, knowing there was insufficient funds in his account, Badrinauth purchased stock hoping that the securities value would increase quickly and then he could sell them for a profit, thus covering the cost (Pl. Tr. 462:14-458:18, 460:16-22, 504:17-505:22). His ploy failed and resulted in a $7,800 loss. Badrinauth paid for the shares with a loan from his Savings and Investment Plan. As a consequence of this transaction, a restriction was placed on the brokerage account in order to prevent any future transaction unless there were sufficient funds (Pl. Tr. 452:20-25).

In May 2003, Badrinauth undertook a short sale. The account manager noted that the funds were insufficient, and issued a margin call to Badrinauth. This call required a deposit of funds ($28,000) in order to cover the purchase. In lieu of payment, Badrinauth sold the shares at a loss of $4,800, and he paid this with a check. Contrary to regulations, he requested that a co-employee "back date" the check several days. According to Badrinauth, the "back date" was required due to a lost check; and that this is a common practice for upper management (Pl. Tr. 522-523).

On June 6, 2003, Aquino met with Badrinauth and SIU investigators. The subject of the meeting were the above referenced transactions. According to Badrinauth, he had Ms. Flis' permission for the address change and the withdrawals. At the meeting's conclusion, Aquino suspended Badrinauth's employment, which became permanent on June 30, 2003. The reason for the termination was Badrinauth's ethical and policy violations (Costello Cert. ¶21; Aquino Tr. 126:5-127:1).

After his termination, Badrinauth went to visit a former colleague at the Iselin office. This apparently upset other employees and security asked Badrinauth to leave and not return. Mr. Cordier, the head of security, posted a picture of Badrinauth at the security desk near the fourth floor elevator

4

where BDRC was located. Under this picture was the statement "not to be admitted in the building." (Cordier Tr. 14:11-15:1). Badrinauth then commenced this lawsuit on June 1, 2004.

### *Discussion*:

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (*quoting Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). Moreover, only disputes over facts that might affect

the outcome of the lawsuit under governing law will preclude the entry of summary judgement. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor – that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 Fed. Appx. 222, 227 (3d Cir. 2007).

Badrinauth did not file a Rule 56.1 statement in accordance with the Local Civil Rules. Where a litigant fails to file the necessary Rule 56.1 statement, the Court will draw the facts from available sources including the pleadings and discovery materials. L.Civ.R. 56. 1, comment 2; see also *Jordan v. Allgroup Wheaton*, 218 F.Supp.2d 643, 646 (D.N.J.2002), *aff'd* 95 Fed. Appx. 462 (3d Cir.2004); *Colida v. Sharp Electronics*, 2004 U.S. Dist. LEXIS 27428 (D.N.J.2004), *aff'd* 125 Fed. Appx. 993 (Fed.Cir.), *cert. den.* 544 U.S. 1057 (2005).

During oral argument, and then confirmed during the March 17, 2008 telephone conference Plaintiff's counsel withdrew the claims based on race/national origin and hostile work environment. The parties agreed that the only remaining claims left for this Court's determination are Plaintiff's defamation claim, wrongful termination claim and Defendant's breach of fiduciary duty and loyalty claims.

**Wrongful Termination Claim**:

Badrinauth asserts wrongful termination in retaliation for identifying MetLife's alleged failure to pay overtime, and stating to management that he would report same to the Department of Labor (Compl. ¶31). New Jersey law provides that "an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 417 A.2d 505, 512 (N.J.1980). "The sources of public policy

6

include legislation; administrative rule[s], regulations or decisions; and judicial decisions." *Id.* Badrinauth admits that he never reported this allegation to any government body. *Tartaglia v. UBS Painewebber, Inc.*, 2006 WL 2560687 (App. Div. Sept. 7, 2006), *cert. granted* 911 A. 2d 849 (2007). The issue is whether a plaintiff asserting a *Pierce* claim is required to report the allegedly wrongful conduct to an entity outside his/her own organization. Plaintiff asserts that no such reporting requirement is necessary to maintain a *Pierce* claim, while Defendant argues the opposite. This precise issue is before the Supreme Court of New Jersey for review. Since certification was granted more than a year ago, a decision will most likely be forthcoming in the near future. Accordingly, the Court denies the motion without prejudice. The motion may be renewed after the Supreme Court rules. [2]

**Defamation**:

Under New Jersey law, the establish a cause of action for defamation, plaintiff must show: "(1) a defamatory statement of fact; (2) concerning the plaintiff; (3) which was false; (4) which was communicated to a person or persons other than the plaintiff; (5) with actual knowledge that the statement was false or with reckless disregard of the statement's truth or falsity or with negligence in failing to ascertain the truth or falsity; and (6) which caused damage." *Santosuosso v. NovaCare Rehabilitation*, 462 F.Supp.2d 590, 600 (D.N.J. 2006) *citing Monroe v. Host Marriot Services Corp.*, 999 F.Supp. 599, 603 (D.N.J.1998) (*citing Feggans v. Billington*, 677 A.2d 771 (1996)).

---

[2] Defendant will also be able to address any causal connection argument in any subsequent motion for summary judgment. Badrinauth was terminated in June 2003 and the alleged internal complaints in February 2002. *Jackson v. Campbell Soup*, 2002 U.S. Dist. LEXIS 27378, *28 (D.N.J. 2002)

Defendants argue that Badrinauth has failed to establish that the statement "not to be admitted into building" underneath his picture is a defamatory statement of fact. Badrinauth argues that a picture could libel a person as easily as a writing. 50 AM.Jur.2d Libel & Slander, §151. He relies on two cases. In one case, the court held that where plaintiff's picture inappropriately appeared in the midst of pictures of persons of ill repute, it is a jury question as to whether plaintiff was defamed. *Regan v. Sullivan*, 557 F. 2d 300 (2d Cir. 1977). In another case, the Court held plaintiff's photo where presented with a false statement that plaintiff requested a co-employee to engage in sexual activity was sufficient to set forth a claim of defamation. *Salek v. Passaic Collegiate School*, 255 N.J. Super 355 (App.Div. 1992); *Regan v. Sullivan*, 557 F.2d 300 (2d Cir. 1977). Here, the picture plus the statement "not to be admitted into the building" does not rise to the level of injury to reputation as occurred in *Regan* or *Salek*. The claim is dismissed.

**Defendant's Breach of Fiduciary Duty and Loyalty Claims**:

Defendants also move for summary judgment on their breach of fiduciary duty and loyalty claims. Defendants when answering Badrinauths complaint asserted several counterclaims for breach of fiduciary duty based upon Badrinauth's removal of allegedly confidential proprietary information from MetLife's computers. Badrinauth concedes that he took information from MetLife prior to his termination, but denies that it is confidential. Neither party has identified the exact information Badrinauth allegedly misappropriated.

An individual may be held liable for breach of loyalty and fiduciary duty for disclosure of confidential materials, but the court must first determine whether the documents are confidential. For example, disclosure or misuse of confidential customer lists may serve as a basis for a breach of the duty of loyalty. *Lamorte v. Burns & Co., v. Walters*, 770 A.2d 1158, 299 (2001). Since the

nature and scope of the documents in plaintiff's possession are unknown, and since the documents have not been disclosed, it is impossible to evaluate the merits of this claim at the time. Motion denied.

In conclusion Defendant's motion for summary judgment as to (a) wrongful termination claim is denied without prejudice and may be renewed upon resolution of the *Tartaglia* case by the Supreme Court of the State of New Jersey; (b) claim for breach of fiduciary duty and loyalty is denied; and (c) the defamation claim is dismissed.

_____
PETER G. SHERIDAN, U.S.D.J.

April 2, 2008